## Travelstead v. Ray, Sheriff, et al.

(Decided April 27, 1916.)

### Appeal from Warren Circuit Court.

1. Schools and School Districts—Sufficiency of—School Elections— Petition Seeking to Enjoin Tax Voted.—A petition seeking to enjoin the collection of a tax voted at a school election should point out specifically the grounds upon which the election is attacked. A general allegation that no election was held and that for this reason the imposition of the tax is unauthorized, is a mere conclusion of law.

2. Schools and School Districts—School Elections Under Section 4399—When Court Will Not Set Aside.—The statute regulating school elections under this section is silent as to the details of conducting the election, and when there has been a full, free and fair expression of the will of the people, together with an entire absence of fraud or unfairness of any kind, the courts will not set aside the will of the people on account of informality or irregularity.

3. Schools and School Districts—School Elections—When Court Will Enjoin Collection of Tax Under.—While the court will not enjoin the collection of a school tax for mere informality or irregularity in holding the election, it will do so if it appears that there was fraud or unfairness of any kind affecting the result of the election.

T. W. & R. C. P. THOMAS and SIMS, RODES & SIMS for appellant.

W. B. GAINES for appellees.

OPINION OF THE COURT BY JUDGE CARROLL.—Affirming.

This suit was brought by the appellant as plaintiff below for the purpose of enjoining the collection of a school tax. The injunction was denied, and the plaintiff appeals.

The election was held under section 4399, subsection 8 of the Kentucky Statutes, reading as follows: "That the county board of education is hereby empowered to lay off a boundary including a number of subdistricts and submit to the voters in that boundary the proposition of a tax sufficient to provide for consolidation of the schools within that boundary and for transportation of pupils to and from said consolidated school, and may provide in districts consolidated under existing laws, by local taxation or otherwise, for the transportation of pupils of the district to and from the schools, and such appropriation and taxation for said purposes of transporting children is hereby validated as if it had been previously expressed in the phrase for local taxation, and that where subdistricts have already been consolidated according to law, and a tax has already been voted in said consolidated districts for local expenses, the term 'local expenses' shall be construed to include the transportation of children in such cases. Said proposition for taxation may be submitted to the voters at the regular election for school trustees or at any other time decided upon by the county board of education, provided that not less than thirty days' notice be given of said election. When such a tax is voted in such consolidated district for local school purposes, it shall remain and be collected annually in accordance with the provisions of law, until repealed by vote of the people."

The proceeding to submit to the people the question of voting a tax was commenced by the following order or resolution of the Warren county board of education: "School tax election notice. Upon proper petitions being filed, this the 15th day of February, 1915, we, the Warren county board of education, consolidated the subdistricts of Woodburn and Mt. Zion, both of which are in division number five of 'Warren county, Kentucky, and call an election on March 20, 1915, to determine whether or not a twenty-five cent tax on each one hundred dollars of taxable property in said consolidated district shall be levied for transportation of children to and from school, and other local school purposes. O. P. Roemer, chairman

Warren county board of education, C. G. Davenport, secretary board of education.''

Under this order the election returns show that ·the question submitted to the voters was: ''Are you in favor ·of a tax levy of twenty-five cents on each one hundred dollars of taxable property of persons and corporations in the Woodburn consolidated district, division number five, subdistrict number 11-14, of Warren county, Kentucky, for local school purposes and transportation of children to and from school?''

The election returns, in the form of a tally sheet, signed by the officers of the election, giving the names of the voters and how they voted, show that 134 voters ·voted for the levy of the tax and 110 voted against it.

The record further shows that after the election returns had been deposited with the board of education, it adopted the following order or resolution:

''We, the division board of education, division number five, of Warren county, having met this March 25, 1915, to canvass the vote taken in Woodburn consolidated district on March 20, 1915, to determine whether a tax of twenty-five cents should be levied on each one hundred dollars of taxable property in said district for local expenses and transportation of pupils to and from school, find the election was regular and the vote carried for the tax by a majority of twenty-three votes. We therefore order that the levy of twenty-five cents on each one hundred dollars of taxable property of persons and corporations in said consolidated district be made for local expenses and transportation of pupils to and from school.''

There is also in the record an order of the board of education describing the boundary of the consolidated district.

The petition seeking the injunction does not specify the grounds upon which the validity of the election is assailed, but merely avers: ''There has been no election upon said proposition as to whether the aforesaid tax of twenty-five cents *ad valorem* on each one hundred dollars' worth of property of this plaintiff or other citizens and taxpayers of the aforesaid subdistrict number fourteen should be levied for the aforesaid purpose, or for any purpose, and that there has been no election or vote of the people upon said question or in reference thereto.''

This petition was wholly insufficient to state a cause of action, and while it is true its sufficiency was not raised by demurrer, we nevertheless think it well to state, that a petition assailing a school election should point out specifically the grounds upon which it is attacked. The mere general allegation that no election was held, and that for this reason the imposition of the tax is unauthorized, is a mere conclusion of law.

Looking, however, to the brief of counsel for appellant we find that the grounds upon which the election is assailed are these: That the order of the board of education calling the election did not specify where the election was to be held, nor the hours during which it was to be held, nor the time for which the tax was to be levied; that the question appearing at the top of the election returns and heretofore set out was not propounded to the voters; that the election could only have been held on the first Saturday in August when school trustees are elected; that the officers of the election were not elected by the voters present at the election or by any one else or sworn.

Section 4399, subsection 8, of the statutes, authorizing an election like this does not make any provision for the details of the election, or how the officers of the election shall be elected, or where the election shall be held, or the exact questions that shall be submitted to the voters. It does, however, make provision for submission to the people of the question to be voted on at any time fixed by the board of education not less than thirty days before the election is held. Apparently it was the intention of the legislature that the omissions in this statute should be supplied by reference to other sections of the school law regulating school elections, which are put by the constitution and statutes in a class by themselves.

Section 4426a, in speaking of the election of trustees, provides that the election shall be by viva voce vote, that the officers of election shall consist of two judges and a clerk, who shall be chosen by the voters at the opening of the polls, and the election shall be held at the school house of the district. In the absence of more definite directions as to these matters, we think the legislature intended these elections to be held at the time fixed by the board of education at the school house in the consolidated district, between the hours of one and four

p. m., and that the officers should be chosen by the voters before the polls opened.

The whole purpose of these school elections is to get a full, free and fair expression of the will of the people voting and entitled to vote at the election. They are not attended with the formality of other elections or surrounded by the safeguards devised to secure fairness in ordinary political elections. When, therefore, there has been a full, free and fair school election and the voters understand the question to be voted on and have ample notice of the time and place when and where the election is to be held, there seems little reason for disturbing the election on mere technical grounds. In the case we have there is no claim that any of the voters in the district did not know where the election was to be held or when it was to be held. An unusually large vote was polled and it appears that much discussion of the matter had taken place in the district before the election was held. No person was denied the right to vote who was entitled to vote, nor did anybody vote who was not a legal voter. So far as the actual conduct of the election was concerned it was as free and fair and open as an election could possibly be. No person wanted to or did practice or attempt to practice any fraud, nor is there any suggestion of unfairness. The officers of the election were selected from the opposing parties, and all of them signed the election returns, which give the names of the voters and how they voted and show the result, and the papers upon which the votes were recorded were returned to the board of education. It is true that several voters were not asked the question that was in fact submitted to the people, but the reason for this was that everybody knew the purpose of the election and the officers and voters clearly understood that those who voted "yes" favored the tax and those who voted "no" opposed it.

If the statute provided in detail how an election like this should be held, and in any substantial particular this statutory direction had been violated, there would be much force in the contention that elections like this should conform substantially to the requirements of the statute. But, as we have stated, the statute is silent as to the details of conducting the election; and so when there has been, as in this case, a perfectly full, free and fair expression of the will of the people, together with an entire absence of fraud or unfairness of any kind, there

seems no good reason why the court should set aside the will of the people, for mere irregularities not affecting the result.

These school elections are very informal affairs, and the statute providing for and, regulating them does not attempt to prescribe the usual details for holding. elections. Evidently the purpose was to get the sense of the people in a free and fair way, and when this has been done, as in this case, the election should not be disturbed. The imposition of a tax like this is of course a serious matter, however deserving its purpose, and we do not mean to hold that the court would not enjoin the collection of a tax authorized to be levied at an election like this, if it appeared that there was fraud or unfairness of any kind affecting the result.

The judgment is affirmed.